1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BENJAMIN CROCKER,                           No.  2:22-cv-1924 DJC AC PS

12                   Plaintiff,

13           v.                                   FINDINGS AND RECOMMENDATIONS

14    COUNTY OF AMADOR, et al.,

15                   Defendants.

16

17           Plaintiff is proceeding in this matter pro se and in forma pauperis, and pre-trial

18    proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  ECF

19    Nos. 3, 4.  Defendants filed a motion to dismiss plaintiff's initial complaint, which was granted

20    with partial leave to amend.  ECF Nos. 27, 31.  Plaintiff filed a first amended complaint on

21    October 23, 2023 ("FAC").  ECF No. 32.  Before the court is defendants' motion to dismiss the

22    FAC.  ECF No. 35.  Plaintiff has opposed the motion at ECF No. 37.  Defendants submitted a

23    reply brief (ECF No. 38) and plaintiff submitted an unauthorized surreply at ECF No. 39.  The

24    matter was taken under submission on the papers.  ECF No. 36.  For the reasons that follow, the

25    undersigned recommends the motion to dismiss be GRANTED and that the complaint be

26    DISMISSED without further leave to amend.

27    ////

28    ////

                                                 1

1

**I.  Background**

2

    A.    <u>The Initial Complaint</u>

3

    Plaintiff Benjamin Crocker filed his initial complaint based on the Amador County

4 Sherriff's Department's alleged use of excessive force on June 15, 2021 and July 22, 2021.  ECF

5 No. 1 at 2.  Plaintiff alleged that on June 15, 2021 Amador County Sherriff Deputy Bailiff Justin

6 Coletti physically pushed him out of a hearing at the Amador County Courthouse, and that a

7 hearing was held in which he was a party, but which he was not allowed to attend.  <u>Id.</u>  Plaintiff

8 filed an affidavit with the Superior Court on July 17, 2021 stating that he was scheduled for

9 reconstructive shoulder surgery on July 21, 2021, and asked that a civil matter to which he was a

10 party be continued accordingly.  <u>Id.</u>  On July 22, 2021 plaintiff was allegedly assaulted and

11 battered by two Amador County Sherriff Deputy Bailiffs, Coletti and Luke McElfish, who acted

12 with deliberate indifference and picked him up by both his arms less than 24 hours following the

13 reconstructive shoulder surgery.  <u>Id.</u>  He was then pushed out of the courthouse through four sets

14 of doors.  <u>Id.</u>  Plaintiff was transported to the Amador County Hospital via ambulance after the

15 incident.  <u>Id.</u> at 3.

16

    Judge John Stephen Hermanson and Commissioner Andrea Sexton of the Amador County

17 Court denied plaintiff's requests for restraining orders against the deputies, and Amador County

18 Sherriff bailiff Sargent Michael Rice dismissed plaintiff's formal grievances.  <u>Id.</u>  Bailiffs Coletti

19 and McElfish conspired to file fraudulent, inaccurate reports in retaliation for plaintiff filing the

20 formal grievance.  <u>Id.</u>  On August 12, 2021, plaintiff served a Tort Claim Preservation Letter on

21 the Amador County Board of Supervisors for the "wanton and sadistic behavior" of Coletti and

22 McElfish, which was approved by then-Amador County Sheriff Deputy Ryan Gellaspie.  <u>Id.</u>

23 After this notice was filed, on September 28, 2021, Amador County District Attorney Todd Reibe

24 and Amador County Deputy District Attorney Michelle Amanson filed a criminal complaint

25 against plaintiff for "victimless penal code violations out of retaliation for my complaints[.]"  <u>Id.</u>

26 at 3-4.  Judge Hermanson "enabled and encouraged" the district attorneys by allowing the action

27 to proceed and not dismissing it for cause.  <u>Id.</u> at 4.

28

    Plaintiff's initial complaint raised the following causes of action: (1) Fourth Amendment

1  Unreasonable Search and Seizure/Excessive Force pursuant to 42 U.S.C. § 1983; (2) Bane Act

2  (Cal Civ. Code § 52.1); (3) violation of Article 1, § 13 of the California Constitution; (4)

3  Negligence; (5) Battery; (6) Barratry pursuant to Cal. Penal Code § 158; (7) Municipal Liability

4  pursuant to 42 U.S.C. § 1983.  Id. at 15-25.  Pursuant to the screening process associated with

5  plaintiffs in forma pauperis status, plaintiff elected to proceed on claims One through Five of the

6  complaint, against defendants County of Amador, Justin Coletti, and Luke McElfish only.  ECF

7  No. 3, 4.  Defendants sought to dismiss the remaining claims.  ECF No. 10.  The court found that

8  the state claims failed on procedural grounds, and those claims were dismissed without leave to

9  amend.  ECF No. 27 at 7.

10        With respect to plaintiff's § 1983 claims, the court concluded that the allegations did not

11  clearly state a claim upon which relief can be granted, requiring dismissal.  However, because the

12  vague nature of the allegations made it impossible to determine whether it was possible for

13  plaintiff to state a plausible claim, the court granted leave to amend.  ECF No. 27 at 8.  Plaintiff

14  filed a First Amended Complaint on October 23, 2023.  ECF No. 32.

15        B.      First Amended Complaint

16        Plaintiff alleges in the FAC that on June 15, 2021, Coletti physically pushed him and told

17  him to "sue him."  ECF No. 32 at 2.  Plaintiff further alleges that on July 17, 2021, he filed an

18  affidavit with the Amador County Superior Court notifying the court that he was scheduled for

19  shoulder surgery on July 21, 2021, and requesting the court continue his matter for 60 days.  Id. at

20  2–3, 16.  Plaintiff attended the hearing on July 22, 2021, where he alleges that Coletti and

21  McElfish "attacked, assaulted and battered" him.  Id. at 3. Plaintiff alleges the deputies acted with

22  "Deliberate Indifference to a Serious Medical Condition" when they grabbed him up by both

23  arms "even though [his] right arm was in a sling from reconstructive shoulder surgery less than

24  24 hours prior, lifting [him] out of the chair [he] was sitting in."  Id.  He alleges that the deputies

25  physically removed him from the courtroom and "pushed/shoved" him through four sets of doors

26  without any direct verbal command from Judicial Official Commissioner Andrea Sexton.  Id.

27  Plaintiff stated that "if the doors didn't open the first time, [he] was shoved/pushed back into it

28  until it did."  Id.

3

Plaintiff alleges that the use of force was unreasonable under the circumstances because he "did not pose an immediate threat to any officer" and had only spoken to them briefly.  ECF No. 32 at 22.  Plaintiff contends he "verbally told Defendants [he] had just undergone shoulder surgery and they were in the court when [he] informed Judicial Official/Commissioner Andrea Sexton of the affidavit . . ."  Id.  Following his removal from the courthouse, plaintiff called for emergency transport to the local hospital.  Id.  Two causes of action remain in this case: (1) violation of plaintiff's right to be free of excessive force under the Fourth Amendment, and (2) County liability for the alleged Fourth Amendment violation pursuant to Monell v. Dep't of Soc. Servs. of City of N.Y.C., 436 U.S. 658, 690 (1978).  ECF No. 32 at 21-27.[1]

C.   Motion to Dismiss

All defendants move to dismiss plaintiff's claims without leave to amend on the grounds that plaintiff does not and cannot state a claim for relief.  ECF No. 35-1.

**II.  Analysis**

A.   Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint."  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

To survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action.  Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed.

---

[1]  The FAC references other constitutional provisions but does not list them as causes of action. ECF No. 32 at 8-9.  Even if plaintiff intended these conclusory references to be legal claims, the court permitted limited leave to amend only as to plaintiff's Fourth Amendment and Monell claims, and those are the only two causes of action properly before the court.

2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010).  However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice.  See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014).  The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).  A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.  Plaintiff Cannot State a § 1983 Claim Against the Officers

Defendants argue that plaintiff's § 1983 claim for excessive use of force fails as a matter of law because the nature of the force used against plaintiff was objectively reasonable.  ECF No. 35-1 at 6-9.  The framework for evaluating a Fourth Amendment excessive force claim under

§1983 is one of "objective reasonableness under the circumstances." <u>Graham v. Connor</u>, 490 U.S. 386, 399 (1989); <u>County of Los Angeles, Calif. v. Mendez</u>, 581 U.S. 420, 427 (2017). "The operative question in excessive force cases is whether the totality of the circumstances justifies a particular sort of search or seizure." <u>County of Los Angeles</u>, 581 U.S. at 427–28, 137 (internal quotations omitted). The Fourth Amendment does not prohibit the use of reasonable force by officers. <u>Tatum v. City & County of San Francisco</u>, 441 F.3d 1090, 1095 (9th Cir. 2006). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Graham</u>, 490 U.S. at 396. The "reasonableness" of an officer's particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id.</u> This test considers the "totality of the circumstances," including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> Additionally, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment." <u>Id.</u>

Here, plaintiff alleges that on June 15, 2021, Coletti physically pushed him out of a hearing that he was a party to at the Amador County Courthouse and told him to "sue him." ECF No. 32 at 2. Plaintiff fails to allege any other facts regarding this incident. Because a "push," without more, cannot amount to excessive force, <u>Graham</u>, 490 U.S. at 396, this incident does not support an excessive force claim. Similarly, Coletti's words cannot amount to a constitutional deprivation. <u>See</u>, <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987) (holding vulgar language is insufficient to state a constitutional deprivation).

The other interactions that serve as the basis for plaintiff's excessive force claim occurred on July 22, 2021. ECF No. 32 at 17-20. Plaintiff alleges that on that day, Coletti and McElfish "used excessive force even though I had verbally indicated I had just undergone surgery and had filed an affidavit with the court almost a week in advance stating I was to undergo surgery before the defendants damaged me." <u>Id.</u> at 19. Plaintiff alleges that the "use of excessive force was

unreasonable under the circumstances." Id. at 22.  Plaintiff alleges the conduct of the courtroom

deputies was "willful, wanton, malicious, and done with the reckless disregard for the

constitutional and civil rights and safety of myself and therefore warrants the imposition of

exemplary and punitive damages[.]"  Id. at 22.  He alleges Coletti and McElfish grabbed him up

by both arms "even though [his] right arm was in a sling from reconstructive shoulder surgery

less than 24 hours prior, lifting [him] out of the chair [he] was sitting in." Id. at 3.  He further

alleges that the deputies physically removed him from the courtroom and "pushed/shoved" him

through four sets of doors without any direct verbal command from Judicial Official

Commissioner Andrea Sexton.  Id.  He indicated that "if the doors didn't open the first time, [he]

was shoved/pushed back into it until it did."  Id.

Although the FAC is silent regarding the details of what led to his removal, the Amador

County Superior Court transcript from the proceeding provided by the defendants provides

context.  See Request for Judicial Notice ("RJFN"), Exhibit A (Amador County Superior Court,

Transcript from July 22, 2021).[2]  Per the transcript, the Commissioner requested that plaintiff

come to the front of the courtroom and speak into a microphone because a Court Reporter and

other parties to the hearing on Zoom needed to hear him speak.  Id. at 103:15–

104:24.  Plaintiff refused and subsequently objected to the Commissioner presiding over the

matter.  Id.  The Commissioner addressed plaintiff's interruptions, and the following interaction

ensued:

> THE COURT: Mr. Crocker, you're not hearing me.  Or you're
> hearing me but you're not listening.  If you going to address the
> Court, I have people appearing on Zoom and I'm not going to act as

---

[2]  This court must, upon request, take judicial notice of any "fact" that is "not subject to
reasonable dispute." Fed. R. Evid. 201(b).  Facts are indisputable, and thus subject to judicial
notice, only if they are either "generally known," or "can be accurately and readily determined
from sources whose accuracy cannot be reasonably questioned Fed. R. Civ. P. 201(1), (2);
United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003).  Judicially noticed facts may be
considered on a dismissal motion under Rule 12(b)(6).  See MGIC Indem. Corp. v. Weisman, 803
F.2d 500, 504 (9th Cir. 1986) ("[o]n a motion to dismiss, we may take judicial notice of matters
of public record outside the pleadings").  Courts may take judicial notice of orders and
proceedings in other courts, including transcripts.  See Trigueros v. Adams, 658 F.3d 983, 987
(9th Cir. 2011).

a relay to tell them what you're saying, so come and sit in front of a microphone or you are not going to be heard. Do you understand, sir?

THE FATHER [Plaintiff]: Ma'am, this court does not have jurisdiction.

THE COURT: No, Mr. Crocker – all right. Let's have Mr. Crocker, he can stop talking, we're not going to listen to him anymore, because I'm not going to relay and play telephone for everyone. So he can either sit there and stop talking, if he continues talking I'll just ask that you escort him outside. We'll find another date and time for everyone to come back.

Id. at 109:18–110:6.  Following this interaction, plaintiff continued to interrupt but the Commissioner ignored him until McElfish asked the Commissioner for permission to escort plaintiff from the courtroom.

DEPUTY MCELFISH: May we have discretion? Thank you. Out.

THE FATHER [Plaintiff]: Are you going to beat me up?

DEPUTY MCELFISH: No. You're out of here. Let's go. Don't want to handle you, but I will. Let's go.

THE FATHER: I don't want to be handled.

DEPUTY MCELFISH: And I don't want to handle you, so let's get up and go now.

THE FATHER: This court has no jurisdiction.

DEPUTY MCELFISH: Okay. You don't want her to make a decision, so leave.

MR. BRIMER: Your Honor, I –

THE COURT: Let's wait just a moment until Mr. Crocker is escorted out. We'll note that the Court has admonished Mr. Crocker that if he wished to be heard he should take a seat at counsel table so that he could speak into the microphone, and everyone could hear him.

(Father exited the courtroom)

THE COURT: All right. For the purposes of creating a record, I'm going to note that I had asked Mr. Crocker several times, as indicated on the record, that he needs to sit at counsel table, please, and use the microphone, so that everyone could hear him . . .

Id. at 111: 22–112:18.

8

"Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015). Here, despite having been given leave to amend in order to explain how the deputies use of force was excessive, plaintiff's own recitation of facts demonstrates that the use of force was not, in fact, excessive but appropriate to the situation at hand. "Indeed, the Supreme Court has stated more than once that—on the merits—not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Brooks v. Clark County, 828 F.3d 910, 921 (9th Cir. 2016) (internal citations and quotations omitted). Here, plaintiff's allegations that he was pushed through the double doors of the court cannot, on their face, establish use of excessive force.

Further, even if there were any potential for debate as to whether the force used was excessive, the deputies would plainly be shielded by qualified immunity. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "Qualified immunity operates . . . to protect officers from the sometimes "hazy border between excessive and acceptable force and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier v. Katz, 533 U.S. 194, 206 (2001) (overturned in part on other grounds, internal quotations omitted). To determine whether a government official is entitled to qualified immunity, a court should decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and if so, determine whether the right at issue was "clearly established" at the time of the allegedly unconstitutional conduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Id. "[T]he assertion of an affirmative defense [such as qualified immunity] may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish the defense.'" Sams

9

1   v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting Jones v. Bock, 549 U.S. 199, 215

2   (2007)).

3          The use of force alleged in the present case is very similar to the force alleged in the Ninth

4   Circuit case Brooks v. Clark County, supra, in which the Court of Appeals evaluated an excessive

5   force claim in which the plaintiff alleged an officer "forcefully shoved him through double-doors

6   of a courtroom injuring his back."  828 F.3d at 921 (internal citations omitted).  In that case, the

7   Court cited multiple cases in which similar use of force (e.g., pushing, shoving) was held not to

8   constitute unconstitutional conduct and concluded that the conduct alleged "cannot be said to be

9   indisputably unconstitutional—at worst, there is room for debate as to whether [the officer's]

10  conduct complied with the Fourth Amendment."  Id. at 921 (emphasis original).  The Ninth

11  Circuit held that because precedent demonstrated it was not "beyond debate" that the use of force

12  was unconstitutional, the officer was entitled to qualified immunity.  Id.  Such is the case here,

13  where plaintiff alleges that he was taken by the arms and pushed through courtroom doors, and

14  nothing more.  Thus, even if plaintiff could demonstrate a Fourth Amendment violation, which he

15  cannot, the defendants are entitled to qualified immunity and the claims must be dismissed.

16          C.  Plaintiff's § 1983 Claim Against the County Necessarily Fails

17          Plaintiff also brings a claim for municipal liability against the County of Amador pursuant

18  to 42 U.S.C. § 1983.  In order to successfully state a claim under § 1983 against a municipality,

19  plaintiff must go beyond showing the municipality's employee violated his constitutional rights;

20  he must additionally show: (a) an identified municipal "policy" or "custom" that caused his

21  injury; (b) that a final policymaking official, as defined by state law, made the decision at issue;

22  or (c) a final policymaker delegated such authority to, or previously ratified a similar deprivation

23  by a subordinate.  Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403-404, 406-407 (1997);

24  Monell v. Dep't of Soc. Servs. of City of N.Y.C., 436 U.S. 658, 694 (1978).

25          Here, the complaint does not allege any facts that could support a Monell claim under any

26  of these theories.  Plaintiff alleges only that the officer defendants "acted pursuant to an expressly

27  adopted official policy or longstanding practice or custom of the Defendant COUNTY."  ECF

28  No. 32 at 23.  Plaintiff goes on to allege the County is liable because it knowingly hired and

retained the officers and fails to maintain appropriate policies and procedures for discipline.  Id. at 25.  Such conclusory allegations are insufficient to state a Monell claim.  See AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012); Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011); Estate of Brooks ex rel. Brooks v. United States, 197 F.3d 1245, 1247 (9th Cir. 1999).  To state a claim for municipal liability, a complaint must specifically identify the policy or custom that is alleged to have caused the unconstitutional conduct.  Id.  Plaintiff was given an opportunity to amend this claim to fix these same deficiencies that were present in the original complaint, and he failed to do so.  Plaintiff's FAC, on its face, fails to establish any constitutional violation, and it fails to establish Monell liability.  This claim, and this case, must be dismissed.

### III.    Further Leave to Amend is Not Appropriate

A pro se plaintiff is generally entitled to an opportunity to correct defects in a complaint by amendment unless the defects cannot be cured.  Noll, 809 F.2d at 1448.  Plaintiff was provided an opportunity to amend and was clearly notified of the deficiencies in his original complaint. Plaintiff filed a First Amended Complaint that did not cure any of the problems with his original complaint.  Thus, the court concludes further leave to amend would be futile and should not be permitted.

### IV.    Pro Se Plaintiff's Summary

The magistrate judge recommends that your case be dismissed with prejudice because the facts you allege do not support any legal claim.  You have an opportunity to file written objections to these recommendations within 21 days.

### V.  Conclusion

For the reasons set forth above, the undersigned recommends that defendants' motion to dismiss at ECF No. 35 be GRANTED and that this case be dismissed in its entirety with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written

11

objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: February 6, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE